The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Craig H.D. Armon presiding. Good afternoon, counsel. Good afternoon. Afternoon. We'll call the case 4-20-0102 People v. Kobretti Matlick. Counsel for the appellant, could you please state your name for the record? Sure, my name is Jonathan Pilsner on behalf of Mr. Matlick. Thank you, Mr. Pilsner. Counsel for the appellate, could you please state your name for the record? My name is Linda McClain for the state. Thank you, Ms. McClain. Mr. Pilsner on behalf of the appellant. Thank you, Your Honor, and may it please the court. Counsel. Mr. Matlick consents that he has stated the gist of three separate constitutional violations, any and all of which should be advanced to the second stage of post-conviction proceedings. If this court finds that any of those pleaded violations do state the gist of a claim, the second issue he has raised regarding the constitutionality of the act as it is applied to him is irrelevant, and this court need not address it any further. However, if this court holds that the pro se pleading as it exists does not, standing on its own, advance the gist of a constitutional claim, Mr. Matlick contends that because of his and difficulties in expressing himself, the act, and because of his case coming from a guilty plea, the act is unconstitutional as applied to him and the facts of this case. In this situation, this petition serves as the initial review of his conviction, and if he is unable to assert how his constitutional rights were violated without the assistance of counsel, because of this extremely unique situation involving how his case came before the post-conviction court and him individually as a defendant, counsel should be appointed to him to ensure that any claim that his constitutional rights were violated is properly preserved and reviewed, sorry, properly presented and reviewed. I will focus my argument initially on issues 1a and 1c before discussing the constitutional challenge more in depth, but I'm of course happy to answer any and all questions if the court would me to focus on a particular part of my argument. Turning to the petition itself, the strongest claim that Mr. Matlick advances in his pro se petition is that counsel was arguably ineffective for failing to adequately investigate the only practical defense Mr. Matlick had, which was an insanity evaluation. To perform efficiently, the law requires counsel to investigate facts, but to do so, he needed to procure expert witness fees from the trial court, and to do that, he needed to establish Mr. Matlick's indigence. Mr. Matlick intends that counsel did do the first part. He established the facts that would have established that proved Mr. Matlick was indigent. However, when the court reached out to counsel and asked counsel what precedent he was leaning on, what case law he was leaning on, to where a defendant who was expert fees, counsel didn't present the court with any applicable law, and that's where counsel's investigation in this case failed. It was an investigation of both the law and the facts. In this situation, the court asked counsel at the trial court for law that would have explained it, and even though the law existed, counsel was unable to present it to the court. In that respect, counsel arguably performed it deficiently, and that prejudiced Mr. Matlick because it denied him access to the only viable defense that he had. On the facts of this case, Mr. Matlick unquestionably committed the act in the Adams County Jail. The only possible defense he had, either to his ability to form the intent to kill or his ability to appreciate his actions altogether, was an insanity evaluation. By failing to procure the necessary materials and to convince the court, when the court, there, the court, sorry, counsel arguably performed deficiently. It's important to keep in mind for this. Mr. Pilsner, I know you addressed this in your brief, but what specifically did counsel fail to argue to the court, or what case did counsel fail to mine for an examination? The court, the case that's most clearly on point is NRA T.W., which is a case out of the First District, and I believe is cited in the briefs. NRA T.W. made clear that it is the indigence of the particular defendant that we're looking at in this case, and that's what counsel, that's what this case really turned on. If you go back to that of the retainer for counsel, who was private counsel, and the court and counsel said that he believed that even though he was privately retained counsel, that Mr. Matlick only needed to prove his indigence to qualify for expert funding. And NRA T.W., which was available to counsel and would have clearly and expressly answered the question in this case, was never brought to the court's attention, even though the court asked for it. And if you look at the language in NRA T.W., it clearly says that all we care about in an evaluation under that statute, under 113-3, is the indigence of the particular defendant. The court was very specific. The facts in T.W. are slightly different, but the language is exactly on point. And here, didn't counsel argue to the court that that was the relevant inquiry, the indigency of the defendant? Counsel made that point to the court, but where counsel slipped up and fell short was when the court asked, what are you standing on? What are you relying on in this case? And counsel pointed simply to a case that was not as strong as NRA T.W. And does the case that counsel pointed to, does it cite to or refer to T.W.? Not to my knowledge, although I can't say for sure. I believe that, and even if it had, the Kingin case that counsel did cite to was not nearly as direct on point, particularly to this specific question. As this developed, this was something that did develop kind of in the moment, because as the hearing progressed along, the court expressed a concern over the fact that private counsel had been retained, and then the idea of, well, what are we looking for the indigency here sort of kind of came out. And that's when the court reached out and said, wait a second, is there anything that supports your position, counsel? And that's where counsel failed, because in that moment, the answer was very clear. It was not a hard answer to come up with, and counsel should have been prepared for that, or counsel should have gone back later and said, all right, I didn't have the answer then, here is the answer now. The answer was there and was ready to go if counsel had just simply presented to the court, and arguably that may have changed the outcome. That may have induced the court to give, to grant the motion and permit Mr. Matlick the materials, the funds that he needed to ascertain whether or not this was a viable defense in this case. But again, counsel failed to investigate the law, failed to be prepared in the moment, and then failed to go correct the court's misapprehension. Because ultimately, the trial court in this case did rule that that was, that because Mr. Matlick's parents had afforded this attorney, or had afforded the retainer for the private attorney, he didn't qualify as indigent. That was a misapprehension of law, and counsel had a duty to, if he couldn't correct in the moment, go back and correct it later, particularly because it prevented Mr. Matlick the necessary materials for his defense. What about Ms. McClain's argument that it's not that he was indigent, and it wasn't a T.W. case anyway, because in T.W., everybody agrees that the defendant is indigent. Here, they didn't agree because they said that the defendant was essentially a dependent. Well, I know of no case law that says that a defendant's indigency is, can qualify as part of dependency analysis. And so, I don't think that that answers the question either. I think that even if Mr. Matlick had been a dependent, quote unquote, he was, we're still looking at the individual defendant's indigency. It's important also, I think, to keep in mind that the section of the code that the expert fee analysis is under is 113-3, which also pertains to the appointment of counsel. And I don't have the cases off the top of my head right now, but there are cases in the past where if somebody else pays the bond, for example, that doesn't go into the analysis of whether or not an individual doesn't qualify for a public defender. So, whether or not the, whether or not some outside party comes in and provides funding or anything for the individual defendant, doesn't go into the analysis of whether or not the defendant is indigent. We look at only the defendant themselves when determining whether to, whether they are indigent or not. And in this case, I think it's quite clear that Mr. Matlick himself was indigent. He had no income. He was in custody. Like, he himself was indigent. The affidavit of assets and liabilities established, he didn't have any money. So, we don't, I think the fact that he's indigent doesn't really come into play here. So, if a defendant had multi-million dollar parents, but was, lived at home, had no job, had no apparent assets, it would be his indigency that would be the determining factor for a trial court judge to decide whether the county should pay for his expert or not. And he happened to hire the most expensive group of criminal defense lawyers available. The fact that he's a, he's indigent himself is all that's needed. Is that what you're saying? I, first off, I do think that's a far different factual situation than we have here, but under the law that it... Well, but your, but your logic is the same. It's the indigency of the defendant himself. That's what you said. So, under your analysis, it doesn't matter what his available resources may be. It's that he happens to be indigent. Therefore, the county is to pay for his expert. That is, that is, yes, that's... Okay. That is correct. And I think that a case that has come after this, de Gerdeshoff, up in the first district, affirms that. Because in de Gerdeshoff, I believe it was the defendant's aunt or some other family member who had paid for private counsel. And de Gerdeshoff asked for expert fees. That's not our situation here. This is a dependent. But again, I don't think the dependent situation changes the analysis at all. Okay. Because de Gerdeshoff says we only look at this individual defendant. How far does, what's the it's this defendant and no further. Because we could comprehend a variety of other things at play, but the law simply focuses on the defendant as he or she stands before the court. Not... It's all based on the statutory provision that has to do with appointed counsel. Yeah. It's all wrapped in the same, in the same statutory provision. In addition to the first issue, Matlick alleged that counsel was ineffective for failing to perfect an appeal. In this context, read broadly and construed in his favor, this does suggest that Matlick sought to withdraw his plea. And in the event that motion was denied, appeal his case. Now I admit, as I say in my reply brief, that this allegation is far more sparse than some of Matlick's others allegations. But when examined by the first day standard, it is the gist of a claim. Even if Matlick did not allege, he asked his counsel to withdraw his plea. This court in Hernandez, in a similar situation, albeit differently, did say that a pleading defendant does not always need to allege that he told counsel he sought to withdraw his plea in the initial pro se pleading, so long as he satisfactorily explains why he did not request an appeal earlier. Matlick intends that he has done so by explaining that he is unable to prepare the petition himself and had to do so through a next friend, that he does not understand his rights, that he does not have adequate access to a law library to learn of his rights, and that he is both poorly educated and mentally ill. This explains why he did not seek an appeal earlier. I think it's also important to keep in mind that if you look at the timeline of this case, Mr. Matlick pled guilty in May of 2015. And only four months later, in August of 2015, he filed the post conviction petition. In this situation, he has adequately explained why he did not request an appeal earlier. And this states the gist of a claim, that counsel that he thought that he sought to review his claim, that he sought to challenge his plea, and that when he was unable to do so. That's all he needs to state at this stage. On those grounds, this court should advance Mr. Matlick's petition to the second stage. If this court, however, finds that none of those are the gist of a petition, Matlick does contend that for the reasons primarily detailed in my reply brief, that the act is unconstitutional as it is applied to him in his particular situation. And I want to be very clear that this case presents, in my research of the law, a rather unique and specific situation. And so this as applied challenge is very specific only to Mr. Matlick's particular situation. That is where we have a defendant who pled guilty, who is, as the record bears out extensively, has a number of mental illnesses, educational struggles. He only has a seventh grade education, only rendered fit to assist counsel during trial on an extreme regimen of medications as the secured record and the psychological evaluations make clear. And in this particular case, because of Mr. Matlick's unique situation and the procedural and initial stage collateral review, this is the first time that Mr. Matlick's constitutional injuries are able to be addressed. And because it's the first time that this has happened, because this is a unique situation and the act does not permit the appointment of counsel to assist Mr. Matlick, who is utterly unable to adequately present his injuries, to present his claims in an understandable fashion of the court, the act is unconstitutional unless it provides for some provision to allow counsel to aid Mr. Matlick. The reply brief details the logic behind this. This question sort of falls into a crack that the United States Supreme Court has identified, but refused so far to answer is, does the right of counsel when reviewing a conviction extend to this initial review collateral proceeding? In Coleman and then later in Martinez and Ryan, the Supreme Court, the U.S. Supreme Court did suggest that the answer would be yes, if the right situation presented itself. Matlick intends this may be that situation, because again, he is poorly, he is, he is, he is poorly situated to present these claims to the court himself. And because of the statutory scheme and the structure that is in place, it would be impossible for him to adequately present those claims to the court. And he has not had a proper opportunity to have his claims heard. This is the first time that any reviewing court whatsoever has been able to review any constitutional claims he might have had. And because so much hinges on what is filed in that initial petition, Mr. Matlick should be appointed counsel to cure that, to cure that constitutional problem and to provide that he, and to ensure that his constitutional rights are protected. I do concede that there has never been a case in Illinois where post-conviction counsel has been appointed as a matter of constitutional right. And I don't argue that any of the prior cases that have held that are wrongly decided. The state leans heavily on Ligon. As I say, in my reply brief, I believe Ligon is correctly decided based upon the facts of that case. But I encourage this court to really examine just how different the facts of this case are, as opposed to the facts of Ligon's case. I make a point of filing a chart. There's, there's a bit of a chart in my reply brief. I think that's on page 19 that really demonstrates the factual differences between Ligon and Mr. Matlick's case. And when you look at the position Mr. Matlick is in, the position he is in resembles Halpert far more than it does the cases that have held that there is no right to post-conviction counsel. I do understand that this is an expansion, but again, because the Supreme Court, the U.S. Supreme Court has identified an outstanding question, I believe that this case falls into that category, that initial stage collateral review. Yes, it's a collateral review, but it's the first true opportunity to review Mr. Matlick's claim. And without counsel, Mr. Matlick's constitutional rights are being violated. And the only way to properly remedy that would be to appoint counsel to assist him in levying that initial challenge to ensure that there were no constitutional injuries that he suffered during his initial trial and plea proceedings. And if there are no further questions, I'll reserve the rest of my time. All right. Thank you, Mr. Pilsner. I see none. Ms. McClain. Can I speak to the court, counsel? The state is maintaining that the trial counsel was not arguably ineffective for failing to procure fees to pay for an expert to investigate the defendant was insane at the time of the offense. Defendant contends that defense counsel's failure to direct the trial court to pertinent well-established law was deficient performance. The problem with this argument is that there was no pertinent well-established law to direct the court to. Defense counsel argued that defendant was indigent and that the obligation to pay for the defense was on the defendant, not the parents. That argument was made at the hearing. When the court asked defense counsel for precedent, defense counsel pointed to the Kenyon case, which she had cited in her motion and thought the area of the law was, quote, somewhat gray. Therefore, defense counsel did direct the court to pertinent case law. The case law pointed out by my opponent merely reiterates that the denial of funds to an indigent defendant for securing a necessary expert witness may violate the Constitution. None of the cases cited in the brief address the issue posed by the court, which is whether defendant who lived with his parents who pay for his expenses, such as his attorney fee, was indigent. In Ray T.W., the parties agreed that respondent was indigent. So that case is not like our case at all where we are arguing whether or not defendant is indigent. Kenyon at least had some similarity in the facts where defendant was awarded an expert witness fee despite the fact he had originally hired a private attorney and only later was found to be indigent. So we would argue that because there was no pertinent case law, there was no failure of defense counsel was not deficient in its performance. Mr. McClain, the order that the Supreme Court directed us to accept Mr. Matlick's document as a notice of appeal from says the petition is not supported by affidavit or other evidence, nor does the petition state the foregoing are not attached, all of which are in violation of 725 ILCS 5-122-2. As such, the petition is frivolous and patently without merit and hereby dismissed. That was the order that he's appealing from, wasn't it? I believe so. Okay. Well, what about that issue itself? Don't we have to address whether, in fact, the document that apparently we're supposed to construe as his appeal from his original conviction, which is actually, well, actually it's an appeal from the petition, but if you look at the substance of it, it's actually an appeal. He's asking to appeal from his original conviction before. But either way, aren't we supposed to take a look at whether there are sufficient affidavits, records, or other evidence to support the allegations in the petition? For sure. I think that at the first stage, he has the obligation to support his petition with affidavits or evidence. Did either of you really address that in your briefs? I'm not sure if I did or not. I don't believe I did. Would you agree we need to address that first before we get to the substance of the allegations? Yes, I would. Yes, I do. I believe so. Okay. Anything else, Ms. McClain? I guess in this case, I'd argue that he did not support his petition with any affidavits or evidence of his insanity. As for Part C, his argument in Part C is that the petition, defendant's contention that the counsel was ineffective or counsel did not perfect an appeal is not to state the gist of a constitutional claim where defendant does not allege he told counsel to perfect an appeal. Nowhere in the petition or in his declaration does he state that he told counsel he wanted to appeal. I guess he supported his petition with a declaration, but it doesn't include the allegation that he wanted to appeal from his conviction. It also does not allege that counsel refused to assist him and defendant did not even strongly imply that he would have timely appealed had counsel filed the proper papers. Even liberally construed, he did not set forth minimally sufficient facts to arguably establish that his counsel was ineffective for failing to perfect an appeal. So we would argue that under Part C, his allegations are not sufficient to get to the second stage. Hernandez, cited by my opponent, is distinguishable where defendant averred in his petition and supporting affidavits that because of his limited English abilities, he was unable to comprehend the trial court's admonishments regarding his appeal rights and neither his counsel nor his court interpreter ever explained his appeal rights. In contrast, in this case, although defendant alleges mental illness and limited educational background in its petition, it was never tied to its failure to timely perfect an appeal. As for the second issue, the post-conviction hearing act is not unconstitutional as applied to defendant where he was not denied his right to counsel, even though it was his first year of review since he did not directly appeal. Defendant states that in his reply brief, it goes through the case law stating that a defendant has a constitutional right to counsel for direct appeals but not for collateral appeals. Defendant then states that exceptions to these rules eventually began to appear. However, this is not true. No court has made an exception to these rules. Halbert does not have a factual situation similar to the one here. In Halbert, it addressed a unique process in Michigan for appeals following plea-based convictions in which a defendant relinquishes an appeal as of right but is allowed to appeal by leave of court. Halbert does not involve a collateral review as in this case. And the same analysis using Halbert was urged by the defendant but rejected in Ligon. The posture of this proceeding could not be more different than Halbert. Post-conviction relief is even further removed from a criminal trial than is discretionary direct review. It is not a part of the criminal proceedings itself and is in fact considered to be civil in nature. It's a collateral attack that normally occurs only after defendant has failed to secure relief through direct review of his conviction. States have no obligation to provide this avenue for relief. And when they do, fundamental fairness does not even require that an attorney, that the state provide an attorney. In Halbert, the court acted as an error-correcting court and had to review the merits of the claim. In this case, I would call this distinguishable because the post-conviction court is not error-correcting but only reviews constitutional issues. It excludes statutory issues or reasonable doubt issues. It's only constitutional issues. In Halbert, the second point the court made was that indigents pursuing first-tier appeals are generally ill-equipped to represent themselves. However, in Illinois, the first stage post-conviction proceedings, the Supreme Court has purposely made a very low threshold for survival because most petitions are drafted by defendants with little legal knowledge or training. A defendant need only allege a gist of a claim, a limited amount of detail, need not make legal arguments, or cite to legal authority. In this case, defendant had the opportunity for a direct appeal and did not take it. We urge this court to follow Ligon, even though in Ligon, it had to do with matters dehor the record and he had already had a direct appeal. First-tier review, whether a defendant does not directly appeal or he raises different issues in his post-conviction because they were dehors the record or because of ineffective assistance of counsel, there's not really a significant difference and we urge this court to follow Ligon. Are there any other questions? I see none. Thank you, Ms. McClain. Mr. Pilsner, let me start with you where I started with Ms. McClain. Your appeal acknowledges that you're appealing from the summary dismissal of the post-conviction petition. The order specifies that the reasons are because of a failure to attach affidavits, records, or other evidence to the petition. Other than part of one paragraph on page nine of your brief, you really don't say anything about that. You just simply gloss over it saying that, well, if it's well-established that when the claim is apparent on the face of the records, we're supposed to assume it is, or relies upon the kind of information which would be difficult, if not impossible, for pro se petitioner to obtain, which I guess we're supposed to also assume is, then it's not necessary. So I take it your position is, well, it's just so readily apparent that we don't even need to address the failure to attach affidavits, records, or other evidence. Well, I don't know what other affidavits Mr. Matlock could attach in this particular case. How about one saying, I asked my lawyer to file an appeal? I believe the allegation inside of that is, in his petition, I'm going to look at the petition and I apologize for that. That comes in his motion to request later, which we were told to take as a notice of appeal. But in his actual petition, the petition that's before this court on appeal now, he does allege that counsel was ineffective for failing to perfect an appeal. The only logical conclusion that I argue you can reach from that is that he sought an appeal and counsel failed to do so. I think that's all that he needs to say at this stage. Inside of his declaration, he says that he reviewed the petition, meaning that he is endorsing what it's saying. That's the extent of what he needs to do. He didn't say he ever asked it. He just says that the attorney failed to, A, file a notice of appeal and to otherwise cause an appeal to be perfected on Mr. Matlock's behalf, B, investigate the circumstances, blah, blah, blah. He never alleges that he asked to have a notice of appeal. As Hernandez sort of lays out, that specific language, that specific ask, that I told my attorney I wanted to appeal, doesn't need to be in there if it is readily apparent as to why he, if there's sufficient explanation as to why he didn't request the appeal earlier. And inside of Mr. Matlock's declaration, he does point out that he does not understand his rights. He dropped out of formal schooling in the seventh grade. And I remind the court that the petition itself is prepared through a next friend, indicating that Mr. Matlock himself could not even prepare this petition. So there are facts just, and that's just looking at the petition itself. If we go beyond that into the record, that supports everything that he says in here, that he has, that he struggles with mental illness and doesn't understand his rights. That is supported elsewhere in the record. And so there's no need- Well, if we go to the record and beyond the petition, we get the motion in limine in the comments that he made the correctional officers, that he's really upset with his lawyer because his lawyer wants to plead insanity. And he just gonna, that he's not crazy, that he's not insane, that he understands it all. He wants to take the plea and he's mad at his lawyer because he wants to assert this insanity defense instead. That's, I can see that's also in the record, but at the first stage, we need to be reading this in the defendant's favor and liberally construing it in his favor and trying to decide- Do we do that even if it's positively rebutted by the record? Only if something is positively rebutted, does the record sort of control that. But I don't think that what you just highlighted, Justice DeArmond, positively rebuts anything inside of the petition, that he struggles to understand these things. Maybe there is a bunch of- The actual plea hearing itself, where the judge is careful to talk to him about the fact that he is taking these medications. And that's why it's really important that we want to understand whether you really understand what's going on. And yes, he does. Have you discussed it with your attorney? Yes, I have. Have you even discussed it with your parents? Yes, I have. But that doesn't, that doesn't affirmatively rebut the fact that he may have sought advice after or outside of this record and was frustrated by counsel. What happened in the court doesn't rebut something that may have happened beyond it. He may have simply said yes in the court at the time, not comprehending his rights, which is a similar problem to what we had in Hernandez. So you want the claim to be raised outside the record, but even if it's rebutted by something within the record? My time has expired. May I, if I- Go ahead and answer. I don't think we have to look outside of the record because we, we don't need to look. The answer may lie outside of the record and that's why we need to advance to the second stage. It is possible, ineffective assistance claims often with their answers lie outside the record because only two people were party to that conversation, the client and counsel. And that's why it lies outside the record and why you have to advance it. What happened in the court doesn't affirmatively rebut something that may have happened between only two parties. All right. Thank you, Mr. Pilsner. Thank you, Ms. McClain. Court will take this matter under advisement. We'll stand in recess. Thank you.